HOWARD FOSTER, RELATOR, v. THE CITY OF ASBURY PARK AND THE PUBLIC GROUNDS COMMISSION, RESPONDENTS.

Submitted July 2, 1909—Decided October 23, 1909.

A person employed by the public grounds commission of Asbury Park as night watchman to guard public buildings being erected, was not protected from discharge by the act of 1895. *Pamph. L., p.* 317.

On rule to show cause why a writ of *mandamus* should not issue to compel the Public Grounds Commission of the city of Asbury Park to restore the relator to his former position as night watchman.

Before Justices REED, BERGEN and VOORHEES.

For the relator, *Charles E. Cook.*

For the respondents, *James D. Carton* and *Patterson & Rhome.*

The opinion of the court was delivered by

REED, J. Foster, the relator, was employed by the Public Grounds Commission of Asbury Park, on March 26th, 1904, at the wages of $10.50 a week, as night watchman, and was discharged from that position December 16th, 1904.

He claims that he was protected from discharge by the provisions of the act (*Pamph. L.* 1895, *p.* 317) which provides:

"'That no person now holding a position or office under the government of this state, or the government of any city or county of this state, or who may hereafter be appointed to any such position, whose term of office is not now fixed by law, and receiving a salary from such city or county or the state, who is an honorably discharged union soldier, sailor or marine, having served in the war of the rebellion, shall be removed from such position or office except for good cause shown after a fair and impartial hearing."

The testimony shows that in 1904 this Public Grounds Commission was building a public casino in Asbury Park, and was conducting some other building operations on Fifth avenue in that city. The commission had already a night watchman employed upon the beach, but upon the rumor of some threats of injury to the public buildings coming to the ears of the members of the commission, they thought it wise to employ an additional watchman to guard those buildings. Foster, the relator, was therefore appointed. He was, as is perceived, employed at the beginning of the summer season, but when the construction work was finished, and the season was ended, Foster was discharged, while White, the regular permanent watchman, was kept in the service of the commission.

There is no recognized office or position of night watchman, or assistant night watchman. It is a well-recognized fact that in cities with a large summer population, many servants are necessarily employed during the season whose services are not needed during the remainder of the year. But aside from that consideration, the character of Foster's employment was not of that continuous and permanent quality contemplated by the statute invoked. The distinction between the class of services, the right to continue which was preserved by the statute, and the class of services not within the terms of the act, is exhibited in the case of *Lewis* v. *Jersey City,* 22 *Vroom* 240. Foster's employment was analogous to that of the general workman employed in that case, and unlike that of the bridge-tender, whose duties were continuous and permanent.

The rule to show cause should be discharged, with costs.